1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MARION C. WOLFE, JR.,

11              Plaintiff,                    No. CIV S-03-2574 LKK GGH P

12        vs.

13   EDWARD S. ALAMEIDA, et al.,

14              Defendants.            FINDINGS AND RECOMMENDATIONS

15   _____/

16   Introduction

17              Plaintiff, evidently now a former state prisoner proceeding pro se,[1] seeks relief

18   pursuant to 42 U.S.C. § 1983.  Pending before the court is defendants' motion to dismiss, filed

19   on 9/13/07, to which plaintiff filed an opposition, after which defendants filed their reply.  This

20   action now proceeds on plaintiff's third amended complaint, filed on 11/15/06, plaintiff's second

21   amended complaint having been dismissed/stricken with leave to amend.  Because this case has a

22   somewhat tortured history, the court finds it useful and most efficient to provide background and

23   context by quoting from a prior order:

24   \\\\\

25   _____

26   [1] Plaintiff indicates he is now a parolee and his address of record substantiates that he is
     no longer incarcerated.

                                              1

Plaintiff's original complaint, filed on 12/16/03, named
some eighteen defendants in a lengthy complaint accompanied by
no less than four volumes of exhibits, exhibits which were not
specifically cross-referenced in the complaint itself.   This court
dismissed plaintiff's broad-sweeping, largely tenuous, and
occasionally incoherent allegations as, inter alia, violative of Fed.
R. Civ. P. 8.  Plaintiff was admonished, should he choose to file an
amended complaint, not to submit additional exhibits.  See Order,
filed on March 30, 2004, p. 7.

Nevertheless, upon filing his first amended complaint, plaintiff, in
addition to failing to cure the defects of the original complaint,
filed three volumes of exhibits.  When the first amended complaint
was subsequently dismissed, the three volumes of exhibits were
stricken and plaintiff was directed, in any second amended
complaint, not to exceed 20 pages in length and to file no
additional exhibits.  See Order, filed on October 13, 2004, pp. 9-
10.

Upon plaintiff's filing of a second amended complaint, this court
found service appropriate upon, and directed service upon some
sixteen defendants, but recommended dismissal of four defendants
from this action.  See Orders, filed on June 15, 2005, and on July
21, 2005, and Findings and Recommendations, filed on June 14,
2005.  The findings and recommendations were adopted, by Order,
filed on September 20, 2005, and defendants Alleva, Bradley,
Joyce and Smith were dismissed from this action.  The sixteen
defendants upon whom the court directed service of process
included defendants Jeanne S. Woodford; Edward S. Alameida;
Deuel Vocational Institute employees:  Claude E. Finn; S.R.
Moore; B. Simon; S. Schlatter; Bobby Jones; J. Anotiada; R.D.
McElmore; Facio; CSP-Old Folsom employees:  Mike Knowles;
Diana K. Butler; Michael D. Bunnell; James T. Blair; Douglas C.
Peterson; Tami Falconer.

Defendants brought a motion to strike the second amended
complaint.  Defendants' motion was granted and plaintiff was
directed not to rely on exhibits to form the factual predicate or
substance of his allegations in a third amended complaint, finding
defendants' point well-taken that plaintiff had relied too heavily on
exhibits.  See Order, filed on September 7, 2006.

In the present motion to strike the third amended complaint,
defendants assert that plaintiff has failed to rectify the defects of
his second amended complaint.  The court will deny the motion to
strike the entire amended allegations, at least in part because
plaintiff has made an effort not to rely so extensively on his
exhibits to form the predicate of those allegations, but will grant
defendants' motion to screen the third amended complaint.
Upon review of the third amended complaint,[] the court finds that,
albeit arguably tenuously, plaintiff states a cognizable claim for

2

1
2
3

        relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1915A(b) as to
        the following previously served defendants: Bobby Jones; S.
        Schlatter; Douglas C. Peterson; R. D. McElmore; Facio; Bunnell
        (as to the claim of retaliation in the form of requiring repeated
        urine tests from plaintiff for filing grievances only).

4  from Order and Findings and Recommendations, filed on 6/15/07, pp. 2-3, adopted by Order,

5  filed on  9/13/07, dismissing defendants Alameida, Finn, Moore, Simon, Falconer, Butler, Blair,

6  Knowles, Woodford, and Anotiada, as well as all claims against defendant Bunnell, with the

7  exception of the claim of subjecting plaintiff to repeated urine tests as a form of retaliation for

8  filing grievances.

9  <u>Third Amended Complaint</u>

10          Thus, this action proceeds on a third amended complaint, which, as noted, was

11  filed on 11/15/06, and subsequently modified, as set forth above, such that only the following

12  defendants and claims remain:  Bobby Jones; S. Schlatter; Douglas C. Peterson; R. D.

13  McLemore;[2] Facio; Bunnell (as to Bunnell, the claim of retaliation in the form of requiring

14  repeated urine tests from plaintiff for filing grievances only).

15          <u>Defendant Jones</u>

16          As to defendant B. Jones, plaintiff claims that this individual, a senior registered

17  nurse and plaintiff's work supervisor while plaintiff was a paid RC medical clerk, submitted a

18  "fraudulent" CDC-101 work supervisory report on 4/11/02, for a date when Jones did not work,

19  to remove plaintiff from his job, a retaliatory act for plaintiff's having exercised his First

20  Amendment right to file grievances related to defendant Jones' actions in discriminating against

21  African Americans in the areas of promotions, pay increases and dismissal.  In addition,

22  defendant Jones is accused of "suggesting" plaintiff "abandon pursuit" of "civil/criminal relief"

23  related to plaintiff's criminal conviction.  Third Amended Complaint (TAC), p. 4. As a more

24  nefarious form of retaliation, plaintiff alleges that defendant Jones was personally involved and

25

26       [2] The court modifies the spelling of this defendant's name to conform with defendants' counsel's spelling.

conspired with an unknown RN to inject plaintiff with "deadly Hep. C and incurable Herpes viruses on 12/11/01 under the ruse of a 'flu shot.'" Plaintiff contends that defendant thereafter conspired to conceal blood tests showing the viruses and that defendant Jones knew by way of a 12/05/01 blood test noted in plaintiff's medical records that he was not infected at the time of the flu shot.  Plaintiff alleges violations of his rights under the First, Fourteenth and Eighth Amendments by defendant Jones.  TAC, 4-5.

Defendant S. Schlatter

Plaintiff, alleging violations of his rights under the First and Fourteenth Amendments as to defendant Schlatter, Deuel Vocational Institute (DVI) law librarian, contends that this defendant denied him access to the courts by not providing adequate services for plaintiff to timely file his "completed non-frivolous civil rights action," identified as Civil Case Number 02AS03043.  TAC, 5.   Plaintiff avers that on 4/26/02, plaintiff apprised Schlatter of a 5/07/02, filing deadline for his civil malpractice action based on his sentencing date but that this defendant refused plaintiff's "request for copies, two hole punch, and fee waiver," stating that he "had to check into the matter through the California Supreme Court...."  Id. at 6.  Plaintiff filed an emergency appeal Log No. DVI 02-00843(10) on 4/29/02, to which defendant Schlatter responded, "knowing this is illegal," that the CDC was not required to provide assistance in civil matters.  Id.  When plaintiff, on 4/29/02, mailed the civil action without the fee waiver, copies or two-hole punching, it was returned by the court clerk on 5/03/04 for failure to comply with court rules (regarding copies, fee waiver, etc.).  Plaintiff filed the complaint on 5/22/02, but it was ultimately dismissed as untimely.  Id.

Plaintiff also alleges that somehow when (non-defendant) Officer Reed returned a sealed, unopened envelope, on 5/03/02, that contained a denial of plaintiff's habeas petition to the Third District Court of Appeal regarding his criminal conviction, and stated, "Now who you gonna sue," this indicates that defendant Schlatter was involved with the state appellate and supreme courts and a court clerk named "Conrad," keeping courts apprised of plaintiff's intent to

1  sue, which information assured the denials of plaintiff's state criminal appeal and habeas corpus

2  petition filings.  Id.  Plaintiff alleges that Schlatter's 4/29/02 inquiry to the state court was not to

3  ascertain deadlines, since he knew in advance that neither the Third DCA or state supreme court

4  "retained" plaintiff's deadline.  Id.  Defendant Schlatter thus deprived plaintiff of any possible

5  "financial recovery from an unjust conviction," and infringed his constitutional rights.  Id. at 7.

6                                  Defendants R.D. McLemore and Facio

7            On 1/31/02, defendant McLemore, when supervising J-Wing, moved plaintiff into

8  a close custody unit in retaliation for plaintiff having filed grievances.  TAC, p. 7.  On 3/11/02,

9  McElmore, conspired with defendant Watch Commander Facio, in housing a prisoner named

10  King, who had a contagious cough as well as "extremely poor hygiene habits" and a "nauseating

11  stench," as plaintiff's cellmate.  Id. & n. 5.  This occurred after plaintiff, on 2/11/02, filed a 602

12  grievance complaining that plaintiff had suffered "direct reprisal" in the form of "manipulation of

13  housing/cellies."  Id.  After plaintiff filed "another grievance" against non-defendant C/O

14  McMannus "on 8/12/02," evidently for attempting to place a mattress that contained a tear where

15  contraband had been found on a bunk without a mattress in plaintiff's cell, defendant McLemore

16  rehoused plaintiff in D-Wing close custody, despite plaintiff's non-close custody status, and with

17  a documented gangmember, even though plaintiff is not gang affiliated.  Id. at 8.  Plaintiff and

18  the gang-affiliated inmate explained to McLemore the "obvious incompatibility," but to no avail.

19  Id. & n. 6.  Plaintiff claims his rights under the First and Eighth Amendment were violated by

20  these defendants.

21                                  Defendant Douglas C. Peterson

22            Plaintiff also alleges violations of his rights under the First and Eighth

23  Amendments by defendant Folsom State Prison (FSP) Chief Medical Officer Peterson.  TAC, 10-

24  11.  Defendant Peterson showed deliberate indifference to plaintiff's serious medical condition,

25  Hepatitis C, ignoring plaintiff's pleas for treatment.  Plaintiff contends that the Old Folsom state

26  prison medical dept. delayed advising plaintiff of his Hepatitis C condition to avoid treatment.

                                                5

Plaintiff makes a tangled claim that his blood test for Herpes was ordered at the same time as the test for Hep. C, but only the positive Herpes results was submitted to non-defendant Dr. McAuthor (sic) and discussed with plaintiff on 3/11/03; plaintiff states the positive Hepatitis C results were received at FSP on 2/26/03 and was placed directly in his file without McAuthor's review. Id. & n. 10. Upon learning of his Hep. C condition through a "confidential source," plaintiff submitted a sick-call slip and was seen on 6/26/03. Although Dr. McAuthor, after a screening, submitted a referral for plaintiff to be treated for Hep. C, it was not acted on until plaintiff filed a grievance on 9/11/03, and then only an interview was scheduled "via Telemed with Dr. Wolf," not a defendant. Even this, however, did not result in treatment for plaintiff, but simply was done "to satisfy my grievance, and the immediate doctors orders...." When plaintiff was seen by an unnamed CDC doctor, plaintiff's blood result showed " a dangerously high 'ALT(SGPT' reading of 97, as compared with the normal range from 2 - 60. Plaintiff has been subjected to repeated delays in the grievance process and his pleas for treatment with Alfa-2 or Alfa-2b and Ribavirin ignored despite his weight loss and "extremely high ALT (SGPT) readings." Plaintiff alleges that failing to treat the Hep. C virus in the manner he states, subjects him to the risk of irreversible liver damage, and death via liver failure. TAC, 10-11.

### Defendant Bunnell

Plaintiff claims that defendant Bunnell retaliated against plaintiff when plaintiff refused to withdraw a "Fourth Amendment claim," evidently challenging the taking of a urine test, "encouraging subordinates to harass" him by subjecting him to four consecutive urine tests within a ten-month period. TAC, 11. Plaintiff's grievance FSP-03-1535 was granted on 11/13/03 but returned as withdrawn. Id. at 12. When plaintiff returned that grievance on 11/20/03, noting that he had not withdrawn it, it was granted. However, on 11/26/03, plaintiff was "randomly" selected to provide a second urine sample. Plaintiff contends that he was thereafter subjected to four additional urine tests on a supposedly random basis. Id. Plaintiff proceeds against this defendant only on his claims of retaliation in violation of the First

1   Amendment.  Id.

2   <u>Motion to Dismiss</u>

3            Defendants move for dismissal, pursuant to non-enumeration Fed. R. Civ. P.

4   12(b), contending that plaintiff failed to exhaust administrative remedies as to his claims against

5   defendants Schlatter, Peterson and Bunnell.  Motion to Dismiss (MTD), p. 2.  Defendants also

6   contend that plaintiff failed to exhaust administrative remedies as to his claim that defendant

7   Jones infected plaintiff with viruses and his claims against defendant McLemore alleging that he

8   placed plaintiff in a close custody unit in January, 2002, and in D-wing with a documented gang

9   member.  Id.

10            *Legal Standard under Non-Enumerated Fed.R.Civ.P. 12(b)*

11            In a motion to dismiss for failure to exhaust administrative remedies under non-

12  enumerated Rule 12(b) of the Federal Rules of Civil Procedure, defendants "have the burden of

13  raising and proving the absence of exhaustion."  <u>Wyatt v. Terhune</u>, 315 F.3d 1108, 1119 (9th Cir.

14  2003).  The parties may go outside the pleadings, submitting affidavits or declarations under

15  penalty of perjury, but plaintiff must be provided with notice of his opportunity to develop a

16  record.  <u>Wyatt v. Terhune</u>, 315 F.3d at 1120 n.14.  The court provided plaintiff with such fair

17  notice by <u>Order</u>, filed on 7/21/05.

18            Should defendants submit declarations and/or other documentation demonstrating

19  an absence of exhaustion, making a prima facie showing, plaintiff must refute that showing.

20  Plaintiff may rely upon statements made under the penalty of perjury in the complaint if the

21  complaint shows that plaintiff has personal knowledge of the matters stated and plaintiff calls to

22  the court's attention those parts of the complaint upon which plaintiff relies.  If the court

23  determines that plaintiff has failed to exhaust, dismissal without prejudice is the appropriate

24  remedy for non-exhaustion of administrative remedies.  <u>Wyatt v. Terhune</u>, 315 F.3d at 1120.

25  \\\\\

26  \\\\\

1          *PLRA Requirements*

2          The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) provides that,

3   "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any

4   other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

5   such administrative remedies as are available are exhausted."  Inmates seeking injunctive relief

6   must exhaust administrative remedies.  Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999).  In Booth

7   v. Churner, 532 U.S. 731,741, 121 S. Ct. 1819, 1825 (2001), the Supreme Court held that

8   inmates must exhaust administrative remedies, regardless of the relief offered through

9   administrative procedures.  Therefore, inmates seeking money damages must also completely

10  exhaust their administrative remedies.  Booth v. Churner, 532 U.S. 731, 121 S. Ct. 1819 (inmates

11  seeking money damages are required to exhaust administrative remedies even where the

12  grievance process does not permit awards of money damages).  The United States Supreme Court

13  has held that exhaustion of administrative remedies under the PLRA requires that the prisoner

14  complete the administrative review process in accordance with the applicable procedural rules.

15  Woodford v. Ngo, 548 U.S. 81, 126 S. Ct. 2378 (2006).  Thus, in the context of the applicable

16  PLRA § 1997e(a) exhaustion requirement, any question as to whether a procedural default may

17  be found should a prisoner plaintiff fail to comply with the procedural rules of a prison's

18  grievance system has been resolved: the PLRA exhaustion requirement can only be satisfied by

19  "proper exhaustion of administrative remedies....," which means that a prisoner cannot satisfy the

20  requirement "by filing an untimely or otherwise procedurally defective administrative grievance

21  or appeal."  Woodford v. Ngo, supra, at 84, 126 S. Ct. at 2382.   Moreover, 42 U.S.C. § 1997e(a)

22  provides that no action shall be brought with respect to prison conditions *until* such

23  administrative remedies as are available are exhausted.  McKinney v. Carey, 311 F.3d 1198 (9th

24  Cir. 2002).

25  \\\\\

26  \\\\\

8

1          *Administrative Exhaustion Procedure*

2                In order for California prisoners to exhaust administrative remedies, they must

3   proceed through several levels of appeal:  1) informal resolution, 2) formal written appeal on a

4   CDC 602 inmate appeal form, 3) second level appeal to the institution head or designee, and 4)

5   third level appeal to the Director of the California Department of Corrections.  Barry v. Ratelle,

6   985 F. Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal. Code Regs. tit. xv, § 3084.5).  A final

7   decision from the Director's level of review satisfies the exhaustion requirement.  Id. at 1237-38.

8          *Argument/Discussion*

9                As to defendant Schlatter, defendants maintain that plaintiff failed to follow the

10  proper procedures for filing his appeal against Schlatter to the third level.  MTD, 6.  Defendants

11  submit documentation that shows plaintiff's appeal, first filed on 4/29/02, concerning being

12  denied court access by Schlatter, Log. No. DVI-02-00843, contains a supplemental page to the

13  second level response, dated 7/5/02, stating that the appeal was "cancelled" at the second level

14  because, during a 6/20/02 interview, plaintiff failed to provide additional information in support

15  of his position.   MTD, 6, Exhibit (Ex.) A, copy of appeal no. DVI-02-00843; Ex. F, Declaration

16  of N. Grannis, Chief Inmate Appeals Branch, ¶ 11; Ex. G, appellant screenout query.

17  Defendants' Ex. A contains a copy of a letter dated 7/25/02, from the third level appeal branch,

18  stating that his appeal was being returned because plaintiff had failed to complete his appeal

19  through the second level.

20                In opposition, plaintiff contends that appeal no. DVI 02-1500 addressed his claim

21  as to defendant Schlatter and received a third level decision, only attaching a copy of a third level

22  decision, dated 11/25/02, addressing a claim made against defendant Schlatter.  Opposition

23  (Opp.), p. 2 & Attachment (Att.) A.

24                In reply, defendants submit a copy of DVI 02-1500 (evidently culled from

25  plaintiff's own past-filed voluminous exhibits) which shows that plaintiff filed the initial

26  grievance on 7/16/02, and that grievance concerned his complaints about copies needed for the

1  filing of his petition for review.  Reply, p. 2, Att. A.  Plaintiff's second level appeal was partially

2  granted in that plaintiff was provided with 17 of the 23 copies he had requested.  Plaintiff

3  complained that defendant Schlatter had called the state supreme court clerk to determine how

4  many copies he needed instead of simply complying with plaintiff's request.

5         The court's review indicates that defendants are correct that this grievance

6  specifically identifies an event occurring on 7/15/02, not the event that occurred in April of 2002.

7  The court notes plaintiff includes as a postscript to an attachment to the grievance: "P.S. on 4-26-

8  02 you said your Boss told you to call, no Boss was involved this time."  See Reply, Att. A, p.

9  12.  This postscript in effect underscores that the grievance identified by plaintiff as exhausting

10  the claims herein is a separate grievance from the one submitted as a basis for the allegations

11  specified herein.  Moreover, within the operative third amended complaint, it is plaintiff himself

12  who identifies DVI-02-00843 as the relevant grievance related to the allegations herein against

13  defendant Schlatter.  Therefore, the court finds that, under <u>Woodford v. Ngo</u>, <u>supra</u>, at 84, 126 S.

14  Ct. at 2382, that plaintiff failed to properly exhaust the relevant claims against defendant

15  Schlatter, and must recommend granting defendants' motion as to this defendant.

16         Regarding defendant McLemore, defendants contend that the Inmate Appeals

17  Branch shows no record of plaintiff's grievance, DVI-02-01323, filed as a result of his placement

18  in the close custody unit in January 2002, having received a third, or Director's, level response,

19  this absence of records indicating plaintiff's failure to exhaust his claim administratively.  MTD,

20  p. 7, Ex. F, Grannis Dec. ¶ 12.  Citing <u>Brown v. Valoff</u>, 422 F.3d 926 (9th Cir. 2005), defendants

21  contend that plaintiff is obligated to exhaust every level of appeal so long as relief is available

22  through the administrative process.  MTD, p. 7.  Ex. B to defendants' motion shows plaintiff's

23  grievance regarding being rehoused on 1/31/02 in close custody, initially filed on 2/1/02, was

24  denied through the second level.

25         As to plaintiff's claim that defendant McElmore retaliated against plaintiff by

26  putting him in D-Wing close custody with a documented gang member, defendants argue that

plaintiff did not follow the proper procedure for filing a third level appeal by failing to complete

the form through the second level.  Id.  Defendants state that plaintiff did not receive a director's

level decision for this appeal, DVI 02-1891, and is thus barred from proceeding on this claim

under Ngo.  MTD, p. 7, Ex. F, Grannis Dec. ¶ 12, Ex. G, appellant screenout query.  Ex. C to the

MTD, contains a copy of the appeal no. DVI 02-1891, filed on 8/12/02, wherein plaintiff

complains about a torn mattress which had contained contraband being placed in his cell.  This

appeal was granted at the informal level noting that the mattress had been logged as being torn

before being put in plaintiff's cell.  At the formal level appeal, filed by plaintiff on 8/23/02,

plaintiff complained of being placed in D-wing as a retaliatory measure, accusing McManus and

defendant McLemore of housing plaintiff there "after we both noted a conflict based on

affiliation/non affiliation."  Following the denial of the formal level appeal, the second level

appeal response was denied as cancelled on 11/25/02, for plaintiff's alleged failure to provide

additional supporting information or to cooperate in the 11/22/02 interview.  MTD, Ex. C, p. 5.

In opposition, plaintiff asks that it be noted that DVI-02-1323 and DVI-02-1891,

defendants' Exs. B& C, are both stamped with the phrase "treat as original," indicating that

CDCR appeals administrators have "inadvertently taken responsibility" for having lost plaintiff's

originals.  Opp., p. 2.  Plaintiff states that it was due to his persistence in attempting to exhaust

DVI- 02-1891 that the interviewer was used to hinder his access to the court.  Plaintiff contends

that the interview was conducted in an unprofessional manner, without any privacy, and was

timed to take place during yard release as inmates milled all about; the interview also took place

immediately "heeling a racial riot" [sic], and that it was "morally unacceptable" that the

interviewer demanded that plaintiff watch him at all times while talking, when plaintiff felt a

need to focus attention on what was going on around him as a means of survival.  Id. at 2-3.

Plaintiff also claims that the administrative appeal process is ineffective and designed to deprive

inmates of court access.  Plaintiff in addition makes a vague reference with regard to the chief

deputy warden's second level response in DVI 02-1891, apparently claiming that claims in 02-

1   1323 are therein referenced, but does not elaborate as to how the claims in either were properly

2   exhausted.

3          In reply, defendants contend that plaintiff "concedes" the failure to exhaust with

4   respect to his claims that defendant McLemore retaliated against plaintiff by placing him in close

5   custody in January of 2002, and reprise their arguments that as to plaintiff's claims regarding his

6   placement in D-Wing with a documented gang member, plaintiff failed to follow the proper

7   procedure and his appeal for review was therefore rejected at the third level, asserting that

8   plaintiff has failed to rebut the records of the Inmate Appeals Branch.   Reply, p. 3.

9          While at the end of his second level response in 02-1891, cancelling the appeal at

10  that level, Chief Deputy Warden Lueth states that plaintiff "may appeal" that decision to the third

11  level, but that thereafter the third level appeal was screened out and rejected because plaintiff had

12  failed to properly complete his appeal through the second level does present something of a

13  conundrum, or Catch-22, for plaintiff; however, the U.S. Supreme Court's ruling has made clear

14  that it is not the function of the court to go behind the determination of a prison administrator in

15  the prison grievance process.

16              Proper exhaustion demands compliance with an agency's deadlines
                and other critical procedural rules because no adjudicative system
17              can function effectively without imposing some orderly structure
                on the course of its proceedings.
18

19  Ngo, supra, at 90-91, 126 S. Ct. at 2386.

20         While in Brown v. Valoff, 422 F.3d 926, 936, the Ninth Circuit noted that a

21  prisoner is not required "to pursue administrative review where all 'available' relief has been

22  accorded," it does not appear that where a plaintiff's appeal has been "cancelled" at the second

23  level of review because the reviewer has found plaintiff failed to support his claims or to

24  cooperate in an interview, simply being informed in rote fashion that he may proceed to the third

25  level does not assure that his apparent failure to abide by requirements at the second level will be

26  excused and that he will be permitted to proceed at the third level to proper exhaustion.

1       The court will recommend dismissal of plaintiff's claims of retaliation by

2 defendant McLemore in placing plaintiff in close custody on 1/31/02 and in D-Wing close

3 custody with a gang affiliated cellmate.   The remaining claims as to defendants McLemore and

4 Facio are that they conspired and retaliated against plaintiff and subjected him to infection by

5 placing him with an ill and contagious cellmate.

6       As to plaintiff's claims against defendant Peterson, defendants contend that two

7 grievances filed by plaintiff complaining of the failure of this defendant and his staff to treat

8 plaintiff's medical condition, FSP-03-1284 and FSP 03-1513, the records of the Inmate Appeals

9 Branch do not show that plaintiff ever processed these appeals to the third level.  MTD, p. 8, Ex.

10 F, Grannis Dec. ¶ 13; Ex. G, exhausted appeals printout.  Ex. E to MTD contains copies of FSP

11 03-1284, a 602 appeal filed on 9/11/03, claiming denial of medical treatment, following a

12 recommendation for treatment by Dr. McArthur (spelled elsewhere McAuthor) which included

13 being seen by a Dr. Wolf.  This grievance shows that it bypassed the informal and formal levels

14 of review on one copy, but on another copy indicates a response from medical appeals (in the

15 informal level section), signed on 9/18/03, by an RN, noting that plaintiff had seen Dr. Wolf on

16 9/15/03, and that he had outlined treatment plans for plaintiff and that plaintiff would be seen in

17 the Hep. C clinic at the next scheduled follow-up appointment.  No further appeal is shown as to

18 this grievance.  In FSP-03-1513, in a 602 appeal filed on 10/29/03, plaintiff complains that the

19 CDC is responsible intentionally or negligently for his infection with the Hep C and Herpes

20 viruses and seeks continued medical treatment and medical coverage for the rest of his life for

21 these diseases.  Ex. E to MTD.  This appeal is stamped as bypassing both the informal and

22 formal level of appeal, but there is no reviewer's response and no further level of grievance

23 supplied.

24       In opposition, plaintiff merely asserts that after continued obstacles presented by a

25 non-defendant named Falconer, all issues related to his claims against defendant Peterson were

26 exhausted at the third level in FSP 04-0780 and FSP-04-0170, which are not attached.

1    In reply, defendants contend that even assuming that these latter appeals

2    incorporate the claims against defendant Peterson, that the Inmate Appeals Branch records show

3    that third level decisions on these appeals did not issue until 8/11/04 and 5/14/04, respectively.

4    Reply, p. 4, citing MTD, Ex. G.  As defendants note, this action was originally filed on 12/16/03.

5    Thus, as defendants' contend, McKinney, forecloses plaintiff's proceeding in this action against

6    defendant Peterson on this showing and this defendant must be dismissed.

7    Defendants note that records of the Inmate Appeals Branch demonstrate that

8    plaintiff filed an inmate appeal against defendant Bunnell in FSP 03-1721, addressing the issue

9    of urine sampling, received at the IAB on 1/26/04 and denied on 4/12/04.  MTD, p. 8, Ex. F,

10   Grannis Dec. ¶ 14, Ex. G, exhausted appeals printout.  Again, while plaintiff completed the

11   grievance process as to defendant Bunnell, defendants contend that plaintiff did so too late with

12   respect to this action.

13   In opposition, plaintiff simply conclusorily asserts that "the issue of defendant

14   Bunnell was exhausted several times," stating that "one point of reference is FSP 04-0362, IAB

15   Case No. 312153," which he attaches as Att. B.  Opp., p. 4.  This is a different appeal from the

16   one noted by defendants and the third level response does indeed indicate that plaintiff was

17   complaining that "random drug testing was being used as a form of harassment...."  However,

18   this decision was dated 8/06/04, and therefore, as defendants point out in their reply, plaintiff

19   failed to complete the process prior to filing the original complaint in this action.  Reply, p. 5.

20   Therefore, both administrative appeals identified as addressing the claims related to defendant

21   Bunnell suffer from the same defect as those presented against defendant Peterson.  That is,

22   plaintiff has only shown that the claims were administratively exhausted after he filed this action,

23   which requires dismissal of the claims without prejudice.  See McKinney, supra.  Defendants'

24   motion as to defendant Bunnell should be granted.

25   Finally, as to defendant Jones, defendants characterize plaintiff's allegations in

26   FSP-03-1513, as encompassing claims not only against defendant Peterson regarding lack of

1  medical treatment, but also claims of conspiracy engaged in by defendant Jones in allegedly

2  having infected plaintiff with Hep C and Herpes viruses, an appeal which defendants have

3  previously identified as unexhausted through the third level (see above).  MTD, p. 8, Ex. F,

4  Grannis Dec. ¶¶ 13, 15, Ex. G.  In opposition, plaintiff asserts that the relevant grievances

5  originated at DVI, not FSP and that his appeal nos. DVI-02-1325 and DVI 02-1128 received a

6  third level decision IAB No. 02-04006, which he attaches and which show exhaustion of

7  plaintiff's claims as to defendant Jones regarding retaliation for plaintiff's having filed

8  grievances in the form of forged work performance ratings resulting in plaintiff's loss of a job

9  assignment.  Opp., p. 4, Att. C.

10        In reply, defendants counter that they have moved to dismiss as unexhausted the

11  conspiracy claim with regard to Jones having infected plaintiff with viruses but not his retaliation

12  claim with respect to Jones submitting a fraudulent work report causing plaintiff to be fired, and

13  that plaintiff has failed to show exhaustion as to his claim of conspiracy regarding the flu shot.

14  Reply, pp. 5-6.  The court agrees that plaintiff has failed to demonstrate, upon defendants' prima

15  facie showing, that his claims of conspiracy related to his having been allegedly infected by Jones

16  with viruses in the form of a flu shot were exhausted administratively.  The motion will be

17  granted as to the plaintiff's claims of conspiracy by defendant Jones in allegedly infecting

18  plaintiff, but plaintiff's claim of retaliation for having filed grievances in the form of fraudulent

19  work reports resulting in loss of his job will proceed.

20        Accordingly, IT IS HEREBY RECOMMENDED that:

21        1.  Defendants' motion to dismiss for failure to exhaust administrative remedies,

22  filed on 9/11/07 (# 81) be granted, as follows:

23        a) Defendants Schlatter, Peterson and Bunnell be dismissed from this action; and

24        b) Plaintiff's claims against defendant McLemore alleging that he retaliated

25  against plaintiff by placing plaintiff in a close custody unit in January, 2002, and in D-wing with

26  a documented gang member be dismissed, as well as plaintiff's claims of conspiracy against

1  defendant Jones for allegedly infecting plaintiff with viruses by way of a flu shot;

2          2.  This matter proceed only as to plaintiff's claims against defendants McLemore

3  and Facio with respect to their having allegedly deliberately housed an ill and contagious

4  cellmate with plaintiff as a form of retaliation and subjecting him to the likelihood of infection,

5  in violation of both the First and Eighth Amendments, and as to defendant Jones for having

6  retaliated against plaintiff for filing grievances by filing false job reports against plaintiff,

7  resulting in plaintiff's loss of a job assignment; and

8          3.  The remaining defendants be directed to file an answer within thirty days of

9  adoption of these findings and recommendations, should that occur.

10          These findings and recommendations are submitted to the United States District

11 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

12 days after being served with these findings and recommendations, any party may file written

13 objections with the court and serve a copy on all parties.  Such a document should be captioned

14 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

15 shall be served and filed within ten days after service of the objections.  The parties are advised

16 that failure to file objections within the specified time may waive the right to appeal the District

17 Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

18 DATED: 08/06/08

19                                              /s/ Gregory G. Hollows

20                                              _____
                                               GREGORY G. HOLLOWS
                                               UNITED STATES MAGISTRATE JUDGE

21

22  GGH:009
    wolf2574.mtd

23

24

25

26